Good morning, your honors. May it please the court, Morrison is here on his refusal by the PTO to allow a reissue based on a mistaken belief that if there's a restriction in the original patent, the original application leading to the original patent, that they are foreclosed from using the reissue statute to put in claims to a completely different embodiment, fully disclosed and enabled, that they had a right to claim. I think it seems like, I totally understand your argument, but it seems like the difficulty you have, as best as I can see, is In re Weiler. Okay, your honor, In re Weiler is sent by the PTO to be the leading case on this issue. If you read Weiler carefully, they had clearly a read of claims. I think there were 14 or 18 in the case. They lost at the board on that. They weren't appealed to the court. The only claims that Weiler had before the court were the brand new claims that we had. The whole case in Weiler revolved around intent to claim. That's an obsolete term, Enri Amos, we cite. Well, you know, you call the language, you call the critical language or the language that the PTO says is critical, dicta in Weiler. And what I'm having a hard time understanding is your intent to claim discussion is in section B of the opinion. Section E of the opinion entitled error starts with the phrase, thus, we arrive at the central question in this appeal, which is whether there is disclosure, but whether Weiler has, it's not whether there is disclosure, but whether Weiler has established error, which can be remedied by reissue. So in other words, the opinion actually says this reference to intent to claim language is confusing, and the real question is this. The very point that the PTO relies on and the point that you're calling dicta. I think that, and it's in the last section of the decision, which says, if it were not error to forego divisional applications on subject matter to which claims had been made in the original application, which was not even before the court, it cannot on the present record have been error to forego divisional applications on subject matter to which claims had never been made. Right, that's the precise holding that they're relying on. That's the precise language that we're struggling with before the PTO. That was not the holding of the court. That was... How can you say that when he says it's the central question he's addressing? Assume for purposes of argument that we read N. Ray Weiler to take this intent to claim language and to push it over here and say that's inconsequential. Right? Right. I mean, let's just assume for purposes of argument that there are two ways to read N. Ray Weiler. One is that intent to claim is inconsequential, and the other is intent to claim is consequential, and that's what it's all about. Let's just assume for purposes of argument we say intent to claim is inconsequential. It shouldn't have said that. That's bad language. Don't ever use it again. Then what's your argument? Okay, let me give you this example. Do you know what I'm saying? Yes. Let me give you this example. What leg do you have to stand on to say that you don't lose under N. Ray Weiler if we say intent to claim is inconsequential? It's clearly logical reasoning. Assume you have a first step patent, no restriction, one invention. It issues. Within the two years, you realize, oh my gosh, I had another invention that was important to me. I overlooked it. You're right to reissue. I go ahead and file that reissue. N. Ray Weiler neuters 251. Well, I'm going to give you the second part of this example. The next case, I had two inventions disclosed. I get a restriction in the first patent. I elect one, and I file my divisional as to two. Now, after they both issue, but still within the two years, I realize I've got another invention. According to the PTO, you had to file that application on that overlooked invention at the same time you filed the patent. You have to do it soon. How does that conform with the first case when you didn't have a restriction? My point is- It's putting a burden on the applicant. Once your intent to claim shot, if you will, misses the target, I think what you're saying is you think N. Ray Weiler's bad law. You think it's bad law. Because in a case where you got a brand new claim, and nothing at all to do with what you disclosed originally where the restriction was, you should have a shot at 251, right? You should have a shot. So you're saying- The reissue statute's remedial. We can't overrule N. Ray Weiler. I'm not asking to overrule Weiler. I'm just trying to explain Weiler. Don't you want to ask the whole court in a bank petition to overrule it? At this point, I'm not asking to overrule Weiler. I'm trying to explain what Weiler's holding what. The Weiler court held it was an intent to claim defect. Okay, well, I'm saying let's assume- Assume we reject that. Assume the gratuitous clause that I just read. That if it was not error to forego divisional applications on subject matter which you did claim, it cannot on the present record, then error to forego divisional applications on subject matter to which claims have never been made. This case, it was decided in the 80s. In about the turn of the century, they revised the reissue statute. It's been revised again under AIA. When they revised it, they recognized that it was no longer the same invention type of claiming that was pre-52 Act. They said when you filed your reissue and the claims you inserted might be restrictable from the original claims. They would restrict it holding a constructive election and you would file a divisional reissue and obtain your reissue claims in a divisional reissue. That overcomes this clause of Weiler. Why couldn't you not do this? That's why you can do this. You want us to distinguish Henry Weiler and say it was applicable back in the olden days but a change in the regulations makes it no longer effective. It's a change in regulations, a change in the statute as well. 251 was amended around the turn of the century. That's before Henry Weiler. The turn of the century, but in the present form, it was there in 1986. Not with the divisional part. What is the change in 251 in particular? How did it read at the time of Weiler versus how it reads now? Because you're asking me to say the legislature overruled our Weiler decision. It was over applicable because they made a change in the statute. They didn't overrule Weiler because Weiler never said if you can't get your divisional claims, you can't get your new claims. He never said that. What I'm saying is dicta. It was gratuitous. Suppose we disagree with you. We read Weiler differently. If that's the case, what arguments do you have other than asking us to tee it up for an en banc? I'm not asking to overrule Weiler at this point. What I'm asking is just to read Weiler for what it says. We're trying to tell you. I think you're having trouble hearing. What the panel is asking you to do is to say assume for purposes of argument that we disagree with the way you read N. Ray Weiler. The intent of claim is just never that section of the opinion doesn't even exist. Then we're saying to you, you started off by saying you're in exactly the same shoes as the applicant in N. Ray Weiler. You had a brand new claim. It wasn't subject to any restriction. It wasn't out there for a divisional, right? The question is why would the... The question that several of us have put to you is where do you go when we reject your reading of N. Ray Weiler? Even if you reject Weiler? Even if you reject my reading under Weiler? Yes. Okay. My example was it makes no logical sense if in a first case you have no restriction and you can put in the overlooked invention. In the second case where you have a restriction but you file a divisional should you not be able to put in the overlooked invention? And in the third case, which is our case, you have a restriction. The reason why you can't do it is because of the holding in N. Ray Weiler. We assume for purposes of argument you have a case that's just dumb wrong. But we're bound by it. This panel is bound by it. The whole court is. You're bound by Weiler. Doyle distinguished Weiler. I mean, you could distinguish Weiler on this fact as well. N. Ray Doyle had to do with... How do we distinguish your case? Doyle was easy to distinguish. Doyle was a linking claim. You're not even arguing this. I mean, you concede that you would not have fallen within the group one elected claims, right? The question is why not? The group one... Answer my question. Do you concede that this claim would not... Or that these claims would not have fallen into the group one elected claims? They could have. They were methods. Group one were method claims. Group two was a computer program. It wouldn't fall in there. Group three was an apparatus. These are method claims we're submitting. If it's going to fall anywhere, it would fall with the method claims already a record. In fact, the examiner restricted it. Method claims relating to what? They didn't restrict it just on the basis of method versus apparatus. No, he restricted it on... You can often have method and apparatus claims together, but you can't have method claims together that claim different subject matters. Right. Our claim is a method of making the original claims of method abuse. And you're saying that these would have fallen within group one? I'm not saying they would have fallen. I'm not saying they would not have necessarily not fallen within the group one. Is that an argument you made below? Did you argue below that Weiler is not applicable here because the claims at issue do, in fact, fall within group one? No, we were restricted out. They said in the first reissue we filed, we were held to constructive election. They said the new claims you put in are divisible from the original claims, constructively non-elected. You can file a divisional reissue, which we did. Well, you never argued that this was more like Doyle than Weiler. You didn't argue that these were linking claims in the same way. No, no, we did not argue they were linking claims. That's correct. Right. And I don't see anywhere that you argued they would have fallen within group one. Again, restriction is for the convenience of the office. We can't say what will be examined together. If you look at claims, or the original claims in this patent, they have different scopes, different groupings. They're not all the same scope and the same class. That's an apparatus. Want to save the rest of your rebuttal time? Thank you. May it please the court. The issues Morrison raises in this case have already been decided by this court's Ryda-Weiler-Doyle case law. That case law is clear. What does Doyle have to do with this case? Doyle's a linking claim case. Doyle reiterates the holdings of Ryda and Weiler, puts those two cases together, and Doyle says that when there has been a restriction requirement that you have acquiesced to, reissue is limited to subject matter that you could have prosecuted in your original application. Okay, so in this particular case, let's go to his last point. Do you agree that these claims actually could have been prosecuted with the Group 1 claims despite what the examiner said about which claims you can prosecute and which ones you can't? Absolutely not, Your Honor. He would not concede it here today, but he conceded many times below that these claims are distinct from the claims that he elected and they could not have been prosecuted in his original application. And I can point the Court to those places where he conceded that. That would be helpful. He conceded it in his appeal brief to the Board, and this is at A187 and 88. He said that the reissue claims do not fall within the Group 1 invention that was elected. That is a confession that he could not have prosecuted them in the original application. He also conceded it at oral argument before the Board. The APJ, and this is at A300, the APJ asked Morrison's counsel, point blank, could you have prosecuted these claims in the original application or were they distinct from your elected group of claims? And he said that they were distinct. That is a dispositive fact in this case. That fact ends the inquiry in this case, that he could not have prosecuted these claims. Okay, so you have that instance. Just a brand new claim could not have been prosecuted, okay? So, and let's assume that Weiler does apply, okay? Weiler doesn't apply. Meaning that he's out of luck. So, my question is, what's the policy that you're trying to promote within Ray Weiler? What's, why do you extend, why would you extend Areta? Sure. From an instance where, yes, you could have put this, you could have moved this claim, you could have filed a division, you could have kept the thing alive in the original application. Sure. What benefit to the patent system is being achieved by Ray Weiler? Sure. What Weiler said was that if it's not error to file, to fail to file a divisional application, the subject matter that you did not elect under Areta, then it's also not error to fail to file a divisional. Why is that illogical? If it's not A, it's not B. Look. So, what's, why does that make any sense? I'm trying to get at, why does Weiler make any sense? Sure. The reason is because acquiescence to a restriction requirement leads to estoppel. And if I may explain. The fact that the matter restricted and not elected makes total sense. I think the problem is it's hard to imagine that you created an estoppel for something that arguably you didn't know about and wasn't at issue and never discussed by anyone. You did, Your Honor. And the reason is because when you're presented with a restriction requirement, the office is asking you or telling you to limit your claim to one distinct invention. You don't have to make that agreement. You can traverse the examiner's restriction requirement. If that fails, you can file a petition to the director. If that fails, you can file a court action. But once you have agreed. Now, what happens if you lose? What happens if you lose on all these? Well, the examiner did the right thing. They set up the restriction. Sure. Whereas you're trying to take something that doesn't fit in any of the three categories and keep it alive. Sure. And it's something you're entitled to because your specification supports it. Sure. But let's say you lose all those actions. Then you have made an agreement. You've agreed to limit your application to that one distinct invention to the exclusion of all others. I have a very important question. Procedurally, I don't know how this works. So when the restriction requirement is entered by the examiner, isn't it only entered in instances when the patentee has actually filed claims to multiple distinct inventions as opposed to simply the examiner happens to notice that there are multiple distinct inventions in the specification? Yes. It only does a restriction if the applicant sought claims on two different inventions in the same application. Yes. Right? Yes. And usually, if the examiner issues such a restriction requirement, doesn't he or she point out, okay, well, these claims go to this invention and these other claims you sought go to a whole different invention? And he points out what those two distinct inventions are? Yes. Right. Okay. And so then the applicant makes whatever election he wants to make vis-a-vis the universe of what is being discussed, which is only the claims originally sought that pertain to more than one invention. I don't understand why either from the PTO's perspective or the applicant's perspective that that would sweep in all the stuff that he never sought to claim originally and was never discussed or thought about by either him or the examiner as evidenced by all of those documents that exist that quantify usually exactly what the different inventions are. The answer to that question, Your Honor, is because when you choose that one distinct invention, you've necessarily excluded all other inventions. And it's as this court explained in Doyle. If you came back, let's say in your original application you had a restriction, you chose your one distinct invention. If you came back later and said, I'm sorry, during the original prosecution and said, oh, wait a minute, I forgot about these other claims. Let me add them. The examiner would say, no, no, no, you can't add those claims because you've already chosen your one distinct invention. They could have, though, filed divisionals. Yes, they could have filed divisionals. Let me give you a hypothetical. So say this same circumstance happens. He's got Group 1, Group 2, Group 3. He chooses Group 1, files divisionals on 2 and 3. Now, he then realizes there's yet another claim. So he could, at that point, file a reissue. And I don't know whether it would be a reissue to one of the divisionals or a reissue to the original. But he could file a divisional reissue, right? OK. I just want to make sure I understand your hypothetical. If he's in his original prosecution and he comes back with this new distinct group of claims that he never claimed before, he could file, and those claims have never been restricted, he could file a continuation. It wouldn't be a reissue because your original prosecution, your original application is still pending. Right, but if he restricted them, if they restricted them at that point during the original prosecution, he could file a divisional. Yes. Right? But he could not come back and reissue. Let's say that he never filed that continuation to those claims that he never presented before. That is distinct from his originally elected claims. Let's say he never filed that continuation or divisional. He cannot come back and reissue and say, oh, wait a minute, I forgot about these claims, because Weiler prohibits that. But what would he have been allowed to had he filed divisionals on Group 2 and Group 3? A reissue? Right. If he had filed divisionals on Group 2 and Group 3, prosecuted Group 1, filed divisionals on 2 and 3, could he then have filed a reissue with respect to these claims? No, because you go back and look at the original restriction requirement. In his original restriction requirement, he acquiesced that the only invention that he was going to get in that application So the only way he could have kept his new invention alive was with a continuation. Yes. As long as you still had co-penancy. OK, that's what I'm trying to say. So he has to do that in a time frame before the patent issues on the elected claims? Yes. I'm just trying to get this. So that's a time frame, right? 251 says you get two years from after the issuance of the patent to come in under 251, right? So long as. Just a time period. That's all I'm talking about. Congress said if you think you didn't claim enough or you didn't claim right by error, Congress gives you a two-year period. Sure, so long as there hasn't been a restriction. And so that's with the restriction. So the Patent Office created, and this court is blessed, this whole system that treats a party who's subject to a restriction entirely differently than someone who is not. Yes, Your Honor, that's completely true. So I'm trying to get at it. So the policy behind all this is for the convenience of the Patent Office to have all the matters that are related to the original application all sort of taken care of at the same time if a restriction is struck, right? That's true, but there's also another one. And simply barring access to a congressional remedy through the form of reissue. I'm just trying to get the table flat, correct? Sure, sure. But I just want to add that. What is it about reissue that makes it this event that neuters a congressional grant of a right to seek reissue? The event that happens in prosecution that prevents the applicant from coming back and getting claims to either claims that he gave up because they were not elected, and that's the Arado holding, or claims that he never submitted before, and that's the Weiler holding. The event that happened during prosecution is that restriction requirement, that acquiescence to the restriction requirement. But in this case, I've got the restriction requirement at day 207. And what the examiner said was, restriction to one of the following inventions is required under 121. And it lists one, two, and three, focusing on the three different inventions as enumerated or evaluated by the examiner by virtue of their claim numbers, which of each they fall into. The inventions are distinct each from the other because of the following reasons, because they're two different claims. So what he's restricted, he's restricted them to one of the following inventions. I just don't understand. I'm really not understanding how this restriction doesn't limit him to one invention in his patent. It limits him to one of these three that he sought to claim. So where I'm really struggling with is the policy that would justify expanding the estoppel notion to ones that weren't presented here, especially when you see quite clearly how the examiner laid it out, focusing on only the ones that had been claimed. I have a few responses to that, Your Honor. My first response is, that policy decision was already made by the court in Weiler. No, look, we get that argument. Don't worry about it. My other response is, when you make that election, you are choosing one distinct invention. So you're choosing one of the inventions you had sought to claim. That's what I was looking for. Does either 121, which it doesn't, or the actual restriction requirement in this case suggest that he has to choose one distinct invention? It does not. It says, choose one of the following inventions. Not one distinct invention. Your Honor, I have to respectfully disagree. It's 207. No, I understand that. But under restriction, under 121, when you choose an invention, you are choosing one distinct invention. As this court explained in Doyle, if you came back during your original prosecution with those new claims that you had never claimed before, they're handed to you. I'll bring it to you, 121. I just want to make sure we're on the same page, because I don't see the one distinct invention language anywhere. Section 121, do you have it handy? Yes. I'll let you get it. Nothing worse than someone reading it to you while you're looking for it. Sure. If two or more independent and distinct inventions are claimed in one application, the director may require the application to be restricted to one of the inventions. One of the two inventions claimed, not just one and only distinct invention in the whole patent of everything that might be listed, but just one of the two that were the subject of the claim. Sure. Sure. I understand that. But when you elect that one invention, as this court said in Doyle, if you came back with those new claims, you could not prosecute them in your original application, because you've already chosen another election. I'm sorry, another group of claims. So as this court said in Doyle, if you came back with those new claims, those claims would also be restricted away. You would have to file them in a divisional application. If you failed to do so, you could not get them in reissue. And I just want to be clear that this court would reissue. Suppose that, does this ever happen? Again, totally don't know. I get my patent application, one invention. There's not any restriction or anything. I come back on reissue, and I seek some new claims to add to the original claims. Does the examiner ever say at that point, no, these new claims are actually a distinct? Is there ever such a thing as a restriction in a reissue? Do you follow what I'm saying? Kind of a weird, I really don't know. So you're allowed to file a divisional reissue. Yes, and that's rule 1.176, which we first brought up in our red brief. I totally agree with you that there are two lines of cases. In one line of cases, there's no restriction requirement. The applicant can come back. Within two years, that's either the Amos case or the Staff case. I totally get. I completely get, Weiler. Don't worry. I understand entirely your argument on Weiler. I'm just trying to figure out from my perspective why you care. If I were to think that Weiler doesn't make sense logically to create an estoppel in those sets of circumstances. I can't do anything about that on a panel, but I have to do it in bank. I guess what I'm wondering is, does the agency really care if we overturn Weiler? Is it some sort of awful thing if we were to do that in bank, not as a panel? Why? Yes, the agency cares. Because when you make that restriction requirement, you have signaled to the public that the only invention that you're going to get in this application, in this patent, is the invention that you elected. Again, you've made that agreement. That agreement is with the public. But you've signaled that you're not going to go after the two as to which there was a restriction requirement. But as to where there's no restriction requirement, the public's always under 251 at risk of the possibility that, as you said, the staff says, that you can come back and seek a reissue, including a divisional. I have to disagree, Your Honor. You signaled that you were going to get in your application only those claims to the distinct invention that you elected. Again, as Doyle explained, if you came back in your original application with those other claims, you could not get those in your original application. You would have to file a divisional. But the oddity is that if there hadn't been a restriction, which is for the convenience of the examiner, none of this would be happening. Sure. I doubt, seriously, if you're in a position today that you're authorized to tell us that the director has considered whether or not he would support, as opposed to decline to support N. Ray Weiler if we had an in-bank argument, right? Your Honor, the case is where— You're talking as though you're speaking for the director when you're saying that you believe N. Ray Weiler is fine law and should be maintained. Yes, we believe in N. Ray Weiler. When and if that day arises that the court in-bank considers N. Ray Weiler, the director may have one or more different views. That's entirely true, Your Honor. I just want to be clear, though— Can I just say one thing? Patent law is full of rules and regulation. There's no question about that. In fact, when I first walked up to patent law in 1990, I thought it was sort of something straight out of 1800s because of all the strange rules. Patent applicants know about ARETA, right? And they know about Weiler, right? And from what you're telling us, there is an escape route in ARETA. That's through filing a divisional. Yes, Your Honor. There's an escape route in Weiler file a continuation, right? If you're during your original pendency, yes. If you still, you've got your thing alive and you get your co-pendency, all of a sudden you realize, whoopsie-doo, I've got this brand-new invention. What Weiler does is to say, you better have your whoopsie-doo while it's all going on, not a year and a half or a year and three quarters after the patent issue. That's exactly right. But everybody understands that. I'm sorry? Everybody understands that. All the people who come into patent law. So even if you have something that might not be perfect law, the players understand it. Yes, Your Honor. The PTO is bound by that law and with all due respect, the panel is bound by it as well. And you're bound by N. Ray Weiler while it's on the books. Yes, Your Honor. Yes, Your Honor. Why don't we let Mr. Pavelko have his thinking for a little time. I believe some of the confusion of Judge Kleppinger comes from the idea that ARETA stops the elected invention. ARETA, as it's been interpreted by the court, is an estoppel on the divisional, the non-elected inventions. Not the other way around. So when you non-elect, you're on notice that if you don't file a divisional case before the other patent issues or it goes abandoned, you're not going to get those claims in a reissue. That's the way ARETA works. The second thing on Doyle. Doyle, this court struggled with Doyle. It says, as far as the public interest in the certainty and finality of patent rights is concerned, it is certainly true that allowing reissue and particularly broadening reissue undermines these various interests to some extent. This is the idea that you get your first patent and that's what you're going to have no other claims other than that elected group. But it says, but Dr. Doyle's situation is no more an affront to the public interest than any other broadening reissue. Congress spoke to this matter when it decided to allow broadening reissues and we may not rewrite the statute based on our own view of the proper outcome of the public policy. I'm saying we're not asking that Weiler be overruled. We're just saying that Weiler should be read in the context of which the decision was made only as to those two claims that were decided on intent to claim. And if it's read that way then there's no prohibition anywhere in ARETA, Weiler, Doyle, or other cases that would prevent an applicant from coming back within the two years. Not only do I not, I find it very difficult to read Weiler the way you're recommending just on the basis of Weiler. What the heck do I do about Doyle which basically as far as I contend tells me as a matter of law exactly what Weiler stands for if there isn't so there's no doubt. How do I get around Doyle? Because Doyle said aside from the lack of intent to claim we also rested our decision on the fact that Weiler's new claims asserted a completely separate invention from the issued claims or any of the non-elected claims. Thus, because 19 and 13 and 19 claims are distinct inventions and the issued claims they too would have been subject, would have been subject to the original restriction requirement and the applicant would not have been allowed to prosecute them with the original you see, I guess I just remember Doyle was trying to understanding of Weiler Doyle was trying to recoup a read of claims. Doyle had non-elected claims and he didn't file a divisional to it. In his reissue he crafted a linking claim a generic claim a broad claim that covered both the elected group and the non-elected and the court allowed him to retrieve the non-elected which should have been barred by a reader by this linking claim. That's what they were struggling with in Doyle. But whatever they were struggling with in Doyle is irrelevant. What is relevant here is what they said Weiler stood for. What was the proposition of law that Weiler stood for. It's not just that I don't feel like I can overturn Weiler even if I wanted to I can't overturn Doyle which interpreted Weiler contrary to the way you'd like me to interpret it. You don't really have to let me ask you this to clarify. It says in Weiler we held that the results should be no different. I have pointed out that Weiler that was not the holding of Weiler because Weiler didn't have any claims before it picked up the new claims and those claims were all treated on the failure of intent to claim. They were not treated as a holding as they tried to make it out in the patent office papers. And so you can distinguish it without having to overrule it. If it's necessary to have Weiler overruled that will be a different argument that I don't think the court needs to go into because we have shown that if it's proper and there was a question does this ever happen? We cited Amos. In Amos there was a set of rollers on a table and it was a mechanical lifting of the rollers so they don't fall off the end of the table. Within two years Amos came back and said wait a minute I can use computer control for this I don't have to lift it at the end of the table I can put it on the table well beyond our time so we need to move along. Thank you both counsel for your arguments. The case is